# IN THE COURT OF APPEALS OF IOWA

No. 14-1753
Filed February 25, 2015

**IN THE INTEREST OF J.C.,**
**Minor Child,**

**D.C., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Louisa County, Mark E. Kruse, District Associate Judge.

A mother appeals the juvenile court's order terminating her parental rights to her child. **AFFIRMED.**

Timothy K. Wink of Schweitzer & Wink, Columbus Junction, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Adam D. Parsons, County Attorney, and David L. Matthews, Assistant County Attorney, for appellee State.

Heidi Van Winkle, Burlington, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

A mother appeals the juvenile court's order terminating her parental rights to her child.

## I. Factual and Procedural Background

The child was born on November 13, 2012. He was removed from the mother's care on September 13, 2013, due to concerns arising from the mother's use of methamphetamine. In December 2013, an Iowa Department of Human Services (DHS) worker was assigned to the case. The DHS worker had worked with the mother regarding the mother's step-daughter beginning in 2011.

DHS offered services to help the mother become reunited with the child. It recommended psychological and substance abuse evaluations, both of which the mother completed. The results of the evaluations indicated the mother needed treatment for both psychological and substance abuse issues. However, the mother's participation in treatment services was half-hearted and unsuccessful. She entered House of Mercy for treatment, but she was discharged from the program after leaving the campus without permission, being absent from scheduled sessions, and allegedly becoming romantically involved with other program residents. She failed to complete the House of Mercy program as a result.

Soon after discharge from the program, she was arrested for violation of her probation. At the time of the termination proceeding, she was incarcerated and had made no efforts to request a visit with the child. There was testimony that the mother was likely to be subjected to criminal charges in another county upon her release.

The DHS worker testified that she had made efforts to contact the mother but had not heard from the mother since her incarceration. She testified that she did not believe the mother had made any progress in remedying her psychological issues or proclivity for substance abuse. She did not believe the child could be returned to the mother's care even if the mother were not incarcerated.

The juvenile court terminated the mother's parental rights on October 6, 2014. It relied on Iowa Code section 232.116(1)(h) (2013)[1] to support its termination order, finding the child could not be returned to the mother's custody. The mother appeals.[2]

**II. Standard of Review**

We review the juvenile court's termination order de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

---

[1] Iowa Code section 232.116(1)(h) provides:
> . . . [T]he court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child [when] . . . [t]he court finds that all of the following have occurred:
> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[2] We note that while the juvenile court simultaneously terminated the father's parental rights to the child, the father has not appealed.

**III. Discussion**

The mother claims termination of her parental rights was improper on two bases. First, she claims the State failed to "make reasonable efforts to return the child to the home." The mother's claim is based on her assertion that the assigned DHS worker was biased against her and actively "resisted the reunification" of the child and mother.

The record does not reflect any bias against the mother on the part of the DHS worker. In fact, the worker testified at the termination hearing that she had previously supported the mother in separate proceedings regarding the custody of the mother's step-daughter. The record shows the DHS worker actively sought to enable the mother's access to services. As the worker testified, "I can simply make the recommendations and provide transportation if needed. I can't force people to [utilize services]." The record demonstrates the mother's poor participation in services was her own decision, and the worker took the proper steps to ensure the mother had a fair opportunity at reunification.

We agree with the juvenile court that "the level of services in this case was high and the personal follow-up by workers . . . was excellent." The State made reasonable efforts to return the child to the mother's care, and we therefore will not disturb the termination order on that basis.

Second, the mother claims there was not clear and convincing evidence the child could not have been returned to her custody at the time of the termination proceedings. *See* Iowa Code § 232.116(1)(h)(4). "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the

correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

We have no doubts the juvenile court correctly concluded the child could not be returned to the mother's custody at the time of the hearing and termination order. It is self-evident the mother could not have assumed the care of the child because the mother was incarcerated and her release date was not known at the time of the hearing.

To circumvent this fact, the mother asserts the father was available to take custody of the child in her stead until she was released. She asserts, in essence, that where *either* parent may be able to take custody of the child, *neither* parent's parental rights may be terminated under section 232.116(1)(h).[3] However, her argument has no bearing on the case at hand.

The juvenile court simultaneously found clear and convincing evidence that the father's parental rights should be terminated. Therefore, there was clear and convincing evidence that the child in this case could not be returned to either the mother's or the father's custody because the mother was incarcerated and the father lost his parental rights as a result of the court's findings regarding his parenting behavior.

Because the child could not have been returned to the custody of the mother at the time of the termination hearing and subsequent order, the juvenile

---

[3] Though the mother's legal argument is ultimately inapplicable to this case, we note this court has previously explained that the language of section 232.116(1)(h)(4) does not have the effect asserted here. *See, e.g.*, *In re C.C.*, No. 14-0935, 2014 WL 3939424, at *2–3 (Iowa Ct. App. Aug. 13, 2014); *In re C.P.*, No. 14-0808, 2014 WL 3513370, at *2 (Iowa Ct. App. July 16, 2014). It is in fact immaterial whether the child can be—or even has been—returned to the care of a parent other than the one whose parental rights are to be terminated.

court's reliance on section 232.116(1)(h) was proper and supported by clear and convincing evidence. We affirm on the statutory ground for termination.

On our de novo review, we next consider whether termination was in the best interests of the child as defined in Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We then determine whether the factors in section 232.116(3) mitigate the need to terminate. *Id.*

We affirm the juvenile court's findings that termination is in the best interest of the child. In making that determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The record demonstrates that the child's safety is best served by removing the child from the mother's care. The child's exposure to and his caretakers' use of drugs, including methamphetamine, weigh heavily against his return to such a setting. The record shows that the child's current placement is a safe and positive environment in which the child receives excellent care. It is in the best interests of the child to remain in that placement, where stable emotional bonds with caretakers can continue to develop.

Lastly, we find none of factors weighing against termination found in Iowa Code section 232.116(3) are applicable in this case. Because the requirements of Iowa Code section 232.116(1)(h) are satisfied, termination is in the best interests of the child, and none of the mitigating factors apply, we affirm.

**AFFIRMED.**